**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**TINA D.,**[1]

      **Plaintiff,**

                                       **Case No. 3:22-cv-0084**

      **v.**                              **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Tina D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On June 10, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since January 16, 2019. R. 66, 80, 203–07. The application was denied initially and upon reconsideration. R. 100–04, 106–08. Plaintiff sought a *de novo* hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge ("ALJ"). R. 109–10. ALJ Peter Lee held a hearing on March 22, 2021,

at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 31–

65. In a decision dated April 6, 2021, the ALJ concluded that Plaintiff was not disabled within

the meaning of the Social Security Act from January 16, 2019, Plaintiff's alleged disability onset

date, through the date of that decision. R. 16–25. That decision became the final decision of the

Acting Commissioner of Social Security when the Appeals Council declined review on

November 4, 2021. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF

No. 1. On June 17, 2022, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 9.[3] On that same day, the case was reassigned to the undersigned. ECF No.

10. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. –, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at \*4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.**   **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

5

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 53 years old on January 16, 2019, her alleged disability onset date. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. *Id.* Plaintiff meets the insured status requirements for disability insurance benefits through December 31, 2023. R. 18.

At step two, the ALJ found that Plaintiff's epilepsy and depressive disorder were severe impairments. *Id.* The ALJ also found that Plaintiff's diagnosed degenerative disc disease, mild neurocognitive disorder, diabetes with neuropathy, hyperlipidemia, and obesity were not severe impairments. R. 18–19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–20.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 20–25. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a mopper. R. 23.

Alternatively and relying on the testimony of the vocational expert, the ALJ found at step five that a significant number of jobs—*e.g.*, jobs as a sweeper, a meat clerk, and a linen room attendant—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 24–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 16, 2019, her alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law*, ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 13. The Acting

7

Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12.

## IV.      SUMMARY OF RELEVANT MEDICAL EVIDENCE

On September 25, 2020, Victoria Cox, M.D., a Board-certified family physician who had treated Plaintiff every three to four months since 2015, completed a four-page, fill-in-the-blank and check-the-box form entitled, "Treating Source Statement – Physical Conditions." R. 632–35. Dr. Cox diagnosed general epilepsy. *Id*. According to Dr. Cox, Plaintiff's symptoms would likely be severe enough to interfere with the attention and concentration needed to perform even simple work-related tasks more than 25% of the time. *Id*. Plaintiff could maintain attention and concentration for less than five minutes "before requiring a break due to symptoms such as pain or medication side effects. *Id*. Plaintiff was likely to be absent for full-time work four days per month "as a result [of] the impairments and/or treatment. *Id*. Dr. Cox went on to assess Plaintiff's ability to perform work-related activities on a regular and continuous basis using the following scale: never (not even once in an 8-hour work day); rarely (1% to 5% of an 8-hour work day); occasionally (6% to 33% of an 8-hour work day); frequently (34% to 66% of 8-hour work day); and continuously (67% to 100% of 8-hour work day). R. 632–33. Dr. Cox opined that Plaintiff could occasionally lift and carry 20 pounds, could rarely lift and carry 50 pounds, but could never lift or carry 100 pounds, explaining that "Plaintiff has unpredictable behavior related to her epilepsy, unable to work due to effects of absence seizures." R. 633. Dr. Cox further opined that Plaintiff could sit and stand/walk for a total of eight hours in an 8-hour workday  and would not require a sit/stand-at-will option, explaining that "Pt is not physically disabled[.]" *Id*.

8

Plaintiff would not need to lie down or recline throughout the workday, would not need to elevate her legs while sitting, and would not need to use a cane or other assistive device to ambulate effectively, explaining that Plaintiff was "not physically disabled[.]" R. 633–34. Plaintiff, who was right-hand dominant, could use both arms/hands to frequently reach overhead, reach in all other directions, handle, finger, feel, and push/pull, and could use both feet to frequently use foot controls. R. 634. Plaintiff could frequently be exposed to humidity and wetness, could occasionally be exposed to dust/odors/fumes/pulmonary irritants, extreme cold, extreme heat, and vibrations, but could never be exposed to unprotected heights, moving mechanical parts, nor could she operate a vehicle. R. 635. In support of these opined environmental limitations, Dr. Cox wrote that Plaintiff "cannot be left alone to drive or operate machinery[.]" *Id*.

## V.      DISCUSSION

### A.      RFC and Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating the opinion of Dr. Cox, resulting in a flawed RFC. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 15–17; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–6. Plaintiff also argues that the ALJ's RFC does not accommodate Plaintiff's moderate limitations in concentration, persistence, or pace. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 11–14. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter,* 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

---

[4] As previously noted, Plaintiff's application was filed on June 10, 2019.

administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires an ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

At step four of the sequential evaluation process, the ALJ in this action found that Plaintiff had the RFC to perform a limited range of medium work as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can: Never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; frequently climb stairs and ramps; occasionally crawl; frequently stoop and crouch; frequently balance; is limited to occasional contact with supervisors, co-workers and the public; and, is able to do only simple and routine tasks.

R. 20. In reaching this determination, the ALJ found, *inter alia*, part of Dr. Cox's opinion to be unpersuasive, reasoning as follows:

> The claimant's family physician opines that the claimant would be off-task 25% of the work day and would be absent approximately 4 days per month. (8F). The

11

doctor opined that the claimant could lift up to 20 pounds occasionally and 50 pounds rarely with unlimited sitting, standing, and walking. I find this opinion to be unpersuasive. Although the opinion indicates that the claimant is not physically disabled and this is supported by the evidence, the opinion regarding off-task time and absences is not supported by the objective evidence and is not consistent with the other evidence of record.

R. 22.

Plaintiff challenges the ALJ's evaluation in this regard, arguing that the ALJ's conclusory discussion did not explain how Dr. Cox's opinion was unsupported or inconsistent and failed to cite to any exhibits or specific medical findings, in violation of the applicable regulation. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 15–17. The Acting Commissioner disagrees, noting that the ALJ found the opinions of the reviewing state agency consultants to be persuasive and specifically relied on the findings of a normal mental status and Plaintiff's own testimony; under these circumstances, the Acting Commissioner argues, the ALJ sufficiently satisfied the regulatory requirements. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12, pp. 17–18. The Acting Commissioner further argues that, because substantial evidence supports the ALJ's decision, the fact that there may also be contrary evidence in the record will not require remand. In any event, the Acting Commissioner contends, Plaintiff fails to point to any portion of the treatment record that supports Dr. Cox's extreme opinion. *Id*. at 18–19. In reply, Plaintiff contends that the Acting Commissioner fails to point to any objective evidence used by the ALJ to discount Dr. Cox's opinion and instead relies on *post hoc* rationalization to support the ALJ's treatment of this opinion. *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–3. Plaintiff goes on to argue that there is evidence in the record to support Dr. Cox's opinion that Plaintiff would be off task more than 25 percent of the time and would have four unexcused absences per month. *Id*. at 4–5 (citations omitted). Plaintiff therefore insists that the ALJ's conclusory discussion discounting Dr. Cox's opinion is deficient under the applicable regulation.

12

Plaintiff's arguments are not well taken. Although it is true that the ALJ failed to specify the particular evidence that contradicted Dr. Cox's opined off-task limitation and absences and did not expressly identify the evidence ("objective evidence" and "other evidence of record") relating to the consistency of that opinion, the Court is not persuaded that this procedural error requires remand. At step four, the ALJ detailed years of medical evidence, including, *inter alia*, that Plaintiff reported in June 2019 that she had staring spells that could last up to a few hours and issues with her memory, but that a neurological examination was unremarkable and included findings of normal motor function and gait; that an August 2019 psychological consultative examination reflected that, *inter alia*, Plaintiff was not undergoing any outpatient treatment, had adequate social skills, appropriate eye contact, fluent and clear speech, coherent and goal-directed thought processes, could recall 3/3 objects both immediately and five minutes later, and could do simple calculations, and serial 3's; that a December 2019 examination reflected normal judgment, insight, and appropriate mood and affect; that a May 2020 psychological examination revealed, *inter alia*, that Plaintiff was not in any mental health treatment program, had normal motor function, coherent speech, a fair recent memory, and fairly good remote memory; that records from July 2020 reflected complaints of depression and anxiety, but an examination revealed normal memory and that Plaintiff was oriented in all spheres and had no suicidal ideation. R. 21–22. The ALJ also considered the opinions of the reviewing state agency medical consultants who found, *inter alia*, moderate paragraph B criteria, which the ALJ found partially persuasive because they were "supported by the medical evidence and made by medical professionals with program knowledge" but "were not based on an in-person interview." R. 22. This review of the record permits the Court to meaningfully evaluate the ALJ's consideration of Dr. Cox's opinion under the regulatory framework and conclude that substantial evidence

13

supports the ALJ's finding that that Dr. Cox's extreme opinion was not persuasive. This discussion by the ALJ implicitly reflects the ALJ's determination that Dr. Cox's opinion was not consistent with or supported by the generally normal mental health/mental status findings elsewhere in the record, by the fact that Plaintiff had no ongoing outpatient mental health treatment, and by the state agency consultants' opinions of only moderate limitations in the paragraph B criteria. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (stating that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" but that "[d]espite the ALJ's procedural error, we could affirm if 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (cleaned up); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness."); *cf. Diaz*, 577 F.3d at 504 ("The ALJ, of course, need not employ particular 'magic' words: '*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'") (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Moreover, to the extent that Plaintiff may complain that the ALJ did not identify and discuss why the objective evidence reported by Dr. Cox did not support that physician's opinion, the Court notes that Dr. Cox offered no explanation or objective evidence to support her opinion that Plaintiff was likely to be off task more than 25% in a typical work day and would likely be absent from work four days per month. R. 632; *see also Hale v. Kijakazi*, No. CV 22-14-E, 2023

14

WL 2573387, at *1 n.2 (W.D. Pa. Mar. 20, 2023) (affirming the ALJ's decision denying benefits where, *inter alia*, "[t]he ALJ only briefly addressed supportability, but that is not unexpected as NP Donikowski's opinions were rendered largely without accompanying explanations"). Based on this record, any failure by the ALJ to further discuss the regulatory factors of consistency and supportability is, at worst, harmless. *See id.*; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *cf. Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 n.2 (W.D. Pa. Jan. 25, 2023) ("In this matter the Court is confident that the outcome of Plaintiff's case was not impacted by the ALJ's error in conflating supportability and consistency because Dr. Tatum's opinions were unaccompanied by supporting evidence or explanations. . . . Dr. Tatum's opinions that Plaintiff would need unscheduled breaks and more than four absences monthly were not accompanied by any explanation or reference to supportive objective evidence. . . . Accordingly, the Court finds that the ALJ's error in her evaluation of supportability toward her persuasiveness determination for Dr. Tatum's opinions was harmless.").

In support of her contention in this regard, Plaintiff cites cases that she believes supports remand on the ground that the ALJ failed to sufficiently discuss the regulatory factors of supportability and consistency. *Plaintiff's Memorandum of Law*, ECF No. 8, p. 17 (citing *Maria R. v. Kijakazi*, No. 2:20-cv-10264, 2022 WL 714737, at *7 (D.N.J. Mar. 10, 2022)); *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–5 (citing *Ramije R. v. Kijakazi*, No. 2:20-cv-14073, 2022 WL 909761, at *7–8 (D.N.J. Mar. 29, 2022)). However, those cases are distinguishable. Specifically, in *Maria R.* and *Ramije R.*, the Court expressly considered the discussion of the record evidence by the ALJs in those cases but concluded that the ALJ's discussion was insufficient to support

the ALJ's conclusory consideration of the regulatory factors. *See Maria R.*, 2022 WL 714737, at *7 ("Although the ALJ detailed evidence relating to Plaintiff's mental impairments, it is not apparent from this recitation of the longitudinal record why the record does not, 'as a whole[,]' support Dr. Tamagnini's opinion. . . . Yet, the ALJ did not explain—nor is it apparent to the Court—how this [longitudinal] evidence is inconsistent with Dr. Tamagnini's opinions.") (citations omitted); *Ramije R.*, 2022 WL 909761, at *7 ("Yet, the ALJ did not explain—nor is it apparent to the Court—how this evidence does not support Dr. Melsky's opinions. . . . Notably, even if citation to this evidence was sufficient to meet the supportability factor, it is not sufficient to satisfy the consistency factor of the new regulations.") (citations omitted). In the case presently before this Court, and for the reasons previously discussed, this Court concludes that the ALJ's discussion of the longitudinal record permits meaningful review and provides substantial support for the ALJ's consideration of Dr. Cox's opinion.

To the extent that Plaintiff points to other evidence in the record that she believes would support Dr. Cox's extreme limitations, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of

16

conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff goes on to complain that the ALJ's RFC limiting Plaintiff to, *inter alia*, simple and routine tasks failed to account for Plaintiff's moderate limitation in concentration, persistence, and pace as found by the ALJ at step three of the sequential evaluation. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 11–14 (citing, *inter alia*, *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3rd Cir. 2004)). Plaintiff's argument in this regard is not well taken. "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) (explaining that this conclusion "flows directly from our decision in *Ramirez*"). In the present case, the ALJ's decision offers a "valid explanation" for the finding that a limitation to simple, routine, and repetitive tasks adequately accommodates a moderate limitation in concentration, persistence, or pace. Specifically, when fashioning the RFC, the ALJ expressly relied on, *inter alia*, evidence that Plaintiff reported no issues with personal care and could prepare simple meals, perform household chores, drive a car, and shop in stores; that a June 2019 neurological examination was unremarkable and reflected normal motor function; that an August 2019 psychological consultative examination included findings of, *inter alia*, adequate social skills, appropriate eye contact, fluent and clear speech, and coherent and goal directed thought process, and that Plaintiff was able to recall 3 of 3 objects both immediately and after five minutes and could perform simple calculations and serial 3's; that a second psychological consultative examination in May 2020, revealed, *inter alia*, normal motor function, coherent speech, a fair recent memory and fairly good remote memory, and Plaintiff reported, *inter alia*, that her activities of daily living included cleaning and cooking, grocery

shopping, and playing games on her phone; and that a July 2020 examination included findings of a normal memory and that Plaintiff was oriented in all spheres, and had no suicidal ideation. R. 21–22. Based on this record, *Ramirez* does not require remand nor does it otherwise undermine the ALJ's RFC determination in this case. *See Hess*, 931 F.3d at 214 (finding that ALJ's explanation was sufficient where the ALJ "highlighted, among other things, the following: mental status examinations and reports that revealed that Hess could function effectively; opinion evidence showing that Hess could do simple work; and Hess's activities of daily living, which demonstrated that he is capable of engaging in a diverse array of 'simple tasks'"); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."); *Long v. Kijakazi*, No. 20-CV-6336, 2022 WL 1204131, at *14 (E.D. Pa. Apr. 22, 2022) (concluding that the ALJ provided a valid explanation for finding that the claimant is capable of performing simple tasks where the ALJ "repeatedly pointed out Plaintiff's 'normal' mental status examinations[,]" "emphasized Plaintiff's ADLs, which included such tasks as childcare for three children (including a one-year-old), house cleaning, woodworking, laundry and shopping[,]" and the claimant's "progress notes consistently showed full orientation, alertness, logical thought processes, fair or normal insight and judgment, and intact reality testing, decision making, attention, concentration, and memory").

Accordingly, for all these reasons, this Court concludes that the ALJ's RFC determination enjoys substantial support in the record, as does his consideration of Dr. Cox's opinion.

### B.      Past Relevant Work

Plaintiff also challenges the ALJ's finding that Plaintiff could perform her past relevant work as a mopper as actually performed by Plaintiff. *Plaintiff's Memorandum of Law*, ECF No. 8, p. 9. Plaintiff specifically argues that there is a conflict between the job description of "mopper" in the Dictionary of Occupational Titles ("DOT") and the RFC: The DOT description of mopper, DOT Code 381.687-014, requires "occasional" climbing to clean and polish lighting fixtures, but the RFC found by the ALJ requires that Plaintiff never climb. *Id.* Plaintiff's argument is not well taken.

At step four, "[t]he claimant bears the burden of demonstrating an inability to return to [her] past relevant work." *Plummer*, 186 F.3d at 428. "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). An ALJ must consider whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In the present case, the ALJ determined that Plaintiff could perform her past relevant work as a mopper as she actually performed the work, explaining as follows:

> During the hearing, the vocational expert identified the claimant's past relevant work which included that of a Mopper (DOT 381.687-014, which is Heavy in exertion but actually performed at Light, and Unskilled with an SVP 2). In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it *as actually performed*. The vocational expert, in response to a question from the undersigned that accurately reflected the above residual functional capacity, compared the requirements of a Mopper to the claimant's restrictions and found that the claimant was capable of this job in actual performance. The undersigned, after a review of the evidence and a comparison between the functioning of the claimant and the requirements of the position, concurs with the vocational expert and so finds that the claimant can perform this past relevant work *as actually performed*.

R. 23 (emphasis added); *see also* R. 60–62 (reflecting the vocational expert's hearing testimony in this regard). At the administrative hearing, Plaintiff's counsel never objected to the vocational

19

expert's testimony in this regard. *See generally* R. 59–65. Plaintiff's challenge before this Court therefore comes too late. *See Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the ALJ's ruling); *cf. Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony.").

Even considering the merits of this challenge, the Court concludes that Plaintiff's argument is unavailing. "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2); *see also* SSR 00-4p, 2000 WL 1898704, at *3 (instructing that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings" and that a vocational expert "may be able to provide more specific information about jobs or occupations than the DOT"). That is exactly what happened in this case. Plaintiff testified, *inter alia*, that she cleaned floors at ShopRite, which required her to lift water buckets

and mop the floors; she did not mention climbing ladders or scaffolds. R. 39–40; *see also* R. 26 (reflecting a work history report where Plaintiff wrote the number "0" when asked how many total hours she climbed in performing this job). The ALJ expressly found that Plaintiff actually performed her job as a mopper at the light level of exertion, as opposed to the heavy level of exertion as described in the DOT. R. 60–61. The hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ, which limited Plaintiff to, *inter alia*, never climbing ropes, ladders, or scaffolds. R. 20, 60–61. In response, the vocational expert testified that such an individual would be able to perform the work of mopper as actually performed by Plaintiff. R. 61–62. Based on this record, the Court is not persuaded that remand is required on this basis. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) ("An individual retains the capacity to perform her past relevant work when she can perform the functional demands and duties of the job *as she actually performed it* or as generally required by employers in the national economy.") (citations omitted) (emphasis added).

### C.      Step Five

Even assuming, without finding, that the ALJ erred in finding at step four that Plaintiff could perform her past relevant work as a mopper, the ALJ also found, in the alternative, that there was other work that existed in significant numbers in the national economy that Plaintiff could perform, *i.e.*, jobs as sweeper, meat clerk, and linen room attendant. R. 23–24. Plaintiff challenges this alternative finding, arguing that the DOT job descriptions of meat clerk and linen room attendant conflict with ALJ's RFC limitation to simple and routine tasks. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 10–11. Plaintiff specifically contends that this RFC

limitation conflicts with the general educational development ("GED") reasoning levels contained in the DOT. *Id.*

By way of background, "[t]he qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak v. Colvin*, 777 F.3d 607 616 (3d Cir. 2014) (quoting Appendix C, DOT). "GED measures 'those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id.* "GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id.* (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry out detailed but uninvolved written or oral instructions" in "problems involving a few concrete variables in or from standardized situations." *Id.* Reasoning level 3 applies "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" in "problems involving several concrete variables in or from standardized situations." *Id.* "SVP levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR." *Id.* (citing SSR 00–4p). The CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)−(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job

in a short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties," and "[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." *Id.* at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

Plaintiff urges this Court to find that the reasoning level 2 associated with the job of meat clerk and that the reasoning level 3 associated with the job of linen room attendant exceed Plaintiff's RFC for simple and routine tasks. However, the United States Court of Appeals for the Third Circuit has held that a job with a reasoning level 2 does not "contradict the mandate that [the claimant's] work be simple, routine and repetitive." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004); *see also Jones v. Astrue*, 570 F. Supp. 2d 708, 716 (E.D. Pa. 2007) (finding no conflict between simple and routine tasks and the definition of reasoning level 2), *aff'd*, 275 F. App'x 166, 168 (3d Cir. 2008)). The Third Circuit has also held that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618. In addition, the three jobs identified by the vocational expert in this case are all classified as SVP 2 or "unskilled," "which suggests that the jobs require minimal reasoning ability[.]" *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 1:16-CV-05691, 2017 WL 4316880, at *7 (D.N.J. Sept. 28, 2017); *see also* 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). Moreover, as previously noted, Plaintiff's counsel did not object to the vocational

expert's testimony nor did she otherwise identify a conflict between such testimony and the DOT at the administrative hearing. *See generally* R. 59−65.

Even assuming, without finding, that Plaintiff was unable to perform her past relevant work of mopper or the other jobs of meat clerk and linen room attendant, Plaintiff has not challenged the job of sweeper, DOT code 389.683-010, which was also identified by the vocational expert as available to a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 24, 59–65. The job of sweeper has a reasoning level 1 and SVP 2, Sweeper-cleaner, Industrial, DICOT 389.683-010, and the vocational expert testified that 16,000 such jobs exist in the national economy. R. 62. Accordingly, even if the Court were to accept, for present purposes only, that the jobs of mopper, meat clerk, and linen room attendant were unavailable to Plaintiff, "the ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy." *Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *2 (3d Cir. June 15, 2023); *see also Penrose v. Comm'r of Soc. Sec.*, No. 1:20-CV-00011-NLH, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020) ("At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy."). Based on this record, the Acting Commissioner met the burden at step five by showing that at least one job—*i.e.,* sweeper—that existed in significant numbers in the national economy that Plaintiff could perform. *See id.*; *see also* R. 20, 23–25, 61–62; *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) ("[T]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act.") (citing 20 C.F.R. § 404.1566); *Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) ("In light of our determination in *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir.1987), that 200 jobs in the regional economy was a 'clear indication' that other meaningful work in the

national economy existed, we conclude that the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor was evidence of other work in significant numbers in the national economy."); *Emilia N. v. Comm'r of Soc. Sec.*, No. CV 21-18677 (RMB), 2022 WL 14834594, at *8 (D.N.J. Oct. 26, 2022) (noting that, even if the Court accepted that two identified jobs exited in a lower number of available positions available in the national economy—547 type copy examiner jobs and 766 loader jobs—"courts in this circuit have accepted lower figures as evidence of a sufficiently 'significant number of available jobs'") (citations omitted).

In short, Plaintiff's challenges to the ALJ's step five findings will not serve as a basis for the remand of this action.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 17, 2023                                 *s/Norah McCann King*
                                                        NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE